# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONEL ESPINOZA,<br><br>          Plaintiff,<br><br>   v.<br><br>CALIBER HOLDINGS LLC, *et al*.,<br><br>          Defendants. | Case No. 2:25-cv-01952-CV (RAOx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**<br><br>**[DOC. # 11]** |

Before the Court is Plaintiff Leonel Espinoza's ("Plaintiff") April 3, 2025 Motion for Order Remanding Action to State Court. Doc. # 11 ("Motion"). Defendant Caliber Holdings LLC, ("Caliber") filed an opposition on May 23, 2025. Doc. # 13 ("Opposition"). With its opposition, Caliber also filed declarations from Alec Fumurescu, Bobby McBride, and Jon Travis Grubbs. Doc. ## 13-1, 13-2, 13-3. On May 30, 2025, Plaintiff filed a reply, a supplemental declaration of Jasmin K. Gill, and evidentiary objections. Doc. ## 14 ("Reply"), 14-1, 14-2.

On June 6, 2025, the Court took the Motion under submission, finding it was appropriate for decision without oral argument. Doc. # 15; *see also*, Fed. R. Civ. P. 78; C.D. Cal. L. Civ. R. 7-15. For the reasons stated below, the Court DENIES the Motion.

## I.    BACKGROUND

### A.    Plaintiff's Allegations

Plaintiff filed this action in Los Angeles County Superior Court on January 23, 2025. Doc. # 1-1 at 6. Plaintiff alleges that he is a California resident who worked for Caliber Holdings L.L.C. and Caliber Holdings of California LLC ("Defendants")[1] as a non-exempt employee from approximately October 2022 through approximately August 2024. *Id*. ¶ 2. Plaintiff seeks to represent a class of "all current and former non-exempt employees of Defendant within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class." *Id*. ¶ 22.

The Complaint asserts nine causes of action against Defendants: (1) failure to pay overtime wages, Cal. Lab. Code §§ 510, 1194, and 1199 (*id*. ¶¶ 32–38); (2) failure to pay minimum wages, Cal. Lab. Code §§ 1197 and 1199 (*id*. ¶¶ 39–44); (3) failure to provide meal periods, Cal. Lab. Code §§ 226.7 and 512 (*id*. ¶¶ 45–52); (4) failure to provide rest periods, Cal. Lab. Code § 226.7 (*id*. ¶¶ 53–60); (5) failure to pay all wages

---

[1] In its Notice of Removal, Caliber asserts that Plaintiff erroneously served his complaint on "Caliber Holdings of California LLC," which Caliber asserts is not a legal entity and not a proper defendant, and that the complaint also improperly names "Caliber Holdings L.L.C." as a defendant rather than "Caliber Holdings LLC." Doc. # 1 at 2 n.1.

due upon termination, Cal. Lab. Code §§ 201–203 (*id*. ¶¶ 61–68); (6) wage-statement violations, Cal. Lab. Code § 226 (*id*. ¶¶ 69–76); (7) failure to timely pay wages during employment, Cal. Lab. Code § 204 (*id*. ¶¶ 77–83); (8) failure to indemnify, Cal. Lab. Code § 2802 (*id*. ¶¶ 84–90); and (9) unfair competition, Cal. Bus. & Prof. Code § 17200 (*id*. ¶¶ 91–95). Plaintiff seeks class certification; unpaid wages; liquidated damages; meal and rest period premiums; statutory penalties; waiting-time penalties; reimbursement damages; injunctive relief; restitution; pre- and post-judgment interest; attorney's fees; costs; and other relief. *Id*. at 26–27.

As relevant here, the Complaint alleges that, for at least four years before this action was filed and continuing to the present, Defendants "at times" failed to pay overtime wages to Plaintiff and Class Members, "or some of them." Doc. # 1-1 ¶ 12. Plaintiff alleges that Plaintiff and Class Members worked shifts exceeding eight hours in a workday, forty hours in a workweek, or seven consecutive workdays in a workweek without receiving all overtime wages owed. *Id*. ¶¶ 12, 36–37. The Complaint identifies several alleged mechanisms for the unpaid overtime, including failure to accurately track or pay for all hours worked at the proper overtime rate; off-the-clock pre-shift and post-shift work; work beyond scheduled hours; work during meal periods; walkie-talkie-related work; failure to include all remuneration, including commissions and incentive pay, in the regular rate of pay; and editing or manipulation of time entries to show fewer hours than actually worked. *Id*. ¶¶ 12, 36. Plaintiff alleges that, as a result, Plaintiff and Class Members were deprived of overtime wages in amounts to be determined at trial. *Id*. ¶ 38.

**B.   Caliber's Removal**

Caliber removed the action on March 5, 2025 under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453. Doc. # 1 ¶¶ 11–40. Caliber alleges that CAFA's minimal-diversity requirement is satisfied because Plaintiff is a California citizen and Caliber is a citizen of Delaware and Texas. *Id*. ¶¶ 15–21. Caliber also alleges that the proposed class contains more than 100 members. *Id*. ¶¶ 12, 24–25.

As relevant here, Caliber calculated the amount in controversy for Plaintiff's overtime claim by assuming one unpaid overtime hour per week, applying the 2021 California minimum wage of $14.00, applying the overtime multiplier of 1.5, and multiplying that figure by 320,760 workweeks. *Id*. ¶ 32. This calculation produces $6,735,960 attributable to Plaintiff's overtime wage claim. *Id*. Caliber also calculated approximately $18,151,200 in waiting-time penalties and included a 25% attorney-fee estimate. *Id*. ¶¶ 33–37. In sum, Caliber estimated that the total amount in controversy here is "at least $31,108,950." *Id*. ¶ 37.

**C. Caliber's Evidence in Opposition to Remand[2]**

In support of its opposition to the Motion, Caliber submitted declarations concerning the employment data underlying its calculations. Jon Travis Grubbs is Caliber's Vice President of IT Enterprise Applications. Doc. # 13-3 ¶ 2. He states that Caliber uses Workday: a human-resources information system that can generate employment-history reports showing employee names, job titles, hire dates, termination dates, active dates in job positions, and overtime-exempt status. *Id*. ¶ 3. Grubbs states that Caliber generated Workday reports in May 2024 and February 2025 identifying non-exempt employees who worked for Caliber in California during the relevant periods. *Id*. ¶¶ 4–5.

Alec Fumurescu is a data analyst at Morgan Lewis (counsel of record for Caliber in this case). Doc. # 13-1 ¶ 2. He states that he analyzed the Workday employment-history reports produced by Caliber. *Id*. ¶¶ 3–6. Based on that analysis, Fumurescu states that more than 6,750 non-exempt employees worked for Caliber in California between May 27, 2022 and May 3, 2024, and that those employees worked more than

---

[2] Plaintiff objects to Caliber's evidence on several grounds, including lack of foundation, lack of personal knowledge, hearsay, authentication, the best-evidence rule, and Federal Rule of Evidence 1006. Doc. # 14-2 at 2–7. The objections are OVERRULED for purposes of this Motion. At the remand stage, the Court may consider "summary-judgment-type evidence relevant to the amount in controversy at the time of removal," including declarations. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citation omitted).

320,760 workweeks. *Id*. ¶ 7. Fumurescu further states that more than 11,700 non-exempt employees worked for Caliber in California between January 23, 2021 and February 13, 2025, and that those employees worked more than 1,037,800 workweeks. *Id*. ¶ 8.

Bobby McBride is a Senior Director of Payroll for Caliber. Doc. # 13-2 ¶ 2. McBride states that his review of Caliber's personnel and pay records pertaining to Plaintiff's employment and that these records show that Plaintiff was paid an hourly rate of "at least $30.00 throughout his employment with Caliber," and his applicable hourly pay rate at the time of his termination was $32.00. *Id*. ¶ 3. He further states that for the period of January 23, 2021 to the present, all individuals employed by caliber in non-exempt job positions in California have been paid an hourly rate that is at least equivalent to or greater than the applicable California state minimum wage. *Id*. ¶ 4.

## II.   LEGAL STANDARD

A defendant may remove an action filed in state court if the federal court would have original jurisdiction over the action. 28 U.S.C. § 1441(a). The removing defendant bears the burden of establishing that removal is proper and that federal subject-matter jurisdiction exists. *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009).

CAFA gives federal courts jurisdiction over class actions in which the proposed class contains at least 100 members, at least one plaintiff is diverse in citizenship from at least one defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. *Ibarra*, 775 F.3d at 1195; 28 U.S.C. § 1332(d). "[N]o antiremoval presumption attends cases invoking CAFA[.]" *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

When the complaint does not specify the amount of damages sought, the removing defendant may satisfy the amount-in-controversy requirement by making a plausible allegation in the notice of removal. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019). If the plaintiff contests the amount in controversy, "both

-5-

sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 574 U.S. at 88. The parties may submit evidence outside the complaint, including affidavits, declarations, and other summary-judgment-type evidence. *Ibarra*, 775 F.3d at 1197. The amount in controversy is "an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see also*, *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202–03 (9th Cir. 2015) (rejecting argument "conflating the amount in controversy with the amount of damages ultimately recoverable").

A plaintiff may challenge the defendant's jurisdictional allegations in a notice of removal through either a facial attack or a factual attack. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). A facial attack accepts the truth of the defendant's allegations but argues that they are insufficient on their face to invoke federal jurisdiction. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020). A factual attack contests the truth of the jurisdictional allegations themselves. *Id*. A factual attack may be made by presenting contrary evidence or by making a reasoned argument why the assumptions underlying the defendant's amount-in-controversy calculation are not supported by the complaint or the evidence. *Harris*, 980 F.3d at 700. Once a plaintiff mounts a factual attack, the defendant bears the burden of proving, by a preponderance of the evidence, that its assumptions are reasonable. *Id*. at 701.

A removing defendant may rely on reasonable assumptions to estimate the amount in controversy. *Arias*, 936 F.3d at 925. But the defendant may not rely on "mere speculation and conjecture" or assumptions "pulled from thin air." *Ibarra*, 775 F.3d at 1197, 1199. If the district court rejects one of the defendant's assumptions, it should not automatically assign the claim a value of zero when a reasonable alternative assumption is available. *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022).

## III.    DISCUSSION

Plaintiff seeks remand on two grounds. First, he argues that Caliber has not shown that CAFA's $5 million amount-in-controversy requirement is satisfied. Doc. # 11 at 9, 13–21. Second, he argues that remand is independently warranted because the Court lacks equitable jurisdiction over his UCL claim, which seeks restitution for the same unpaid wages Plaintiff seeks through his Labor Code claims. *Id.* at 21–24. As explained below, the Motion is DENIED. The Court finds that Plaintiff's overtime allegations reasonably place more than $5 million in controversy, and because the Court has CAFA jurisdiction over this action, Plaintiff's equitable-jurisdiction argument does not require remand.

### A.    Plaintiff Raises a Factual Attack on Caliber's Removal

Caliber argues that Plaintiff raised only a facial attack on removal because Plaintiff did not submit contrary evidence or offer his own amount-in-controversy calculation. Doc. # 13 at 13–15. The Court disagrees.

The Ninth Circuit has defined the relevant line between a facial and factual attack on removal in the *Salter* and *Harris* cases. In *Salter*, the plaintiff argued that the removing defendant had not attached evidence to the notice of removal showing that the amount in controversy exceeded $5 million. 974 F.3d at 964–65. The Ninth Circuit treated that challenge as facial because the plaintiff did not dispute the truth, reasonableness, or factual basis of the defendant's jurisdictional allegations; he argued only that the defendant's allegations came without proof. *Id.* at 965.

By contrast, in *Harris* the plaintiff challenged the assumptions built into the defendant's amount-in-controversy calculation, including assumptions about which employees worked shifts long enough to support the claimed meal- and rest-period penalties. 980 F.3d at 700. The Ninth Circuit held that the challenge was factual because the plaintiff's brief supporting his remand attacked the reasonableness and evidentiary foundation of the defendant's assumptions. *Id.* at 700–01. It also made clear that a plaintiff may raise a factual attack through reasoned argument instead of submitting

competing evidence or calculating an alternative amount in controversy. *Id.* at 700 ("A factual attack . . . need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence.").

Plaintiff's Motion is closer to *Harris* than *Salter*. Plaintiff challenges the assumptions underlying Caliber's amount-in-controversy calculation and disputes Caliber's assumption that one unpaid overtime hour is in controversy for every workweek used in the calculation. *See* Doc. # 11 at 13–20; Doc. # 14 at 9–15. He also challenges Caliber's reliance on the Complaint's reference to "Class Members, or some of them," its workweek assumptions, its waiting-time-penalty assumptions, and the declarations Caliber submitted with its Opposition. Doc. # 11 at 13–20; Doc. # 14 at 9–18; Doc. # 14-2. Those arguments challenge the substance of Caliber's jurisdictional showing, not merely the form of its notice of removal. Plaintiff has therefore raised a factual attack. *See Harris*, 980 F.3d at 700–01.

Accordingly, Caliber must prove by a preponderance of the evidence that the amount in controversy exceeds $5 million. *Id.* at 701. As explained below, Caliber has met that burden.

**B.**     **Caliber Has Established CAFA Jurisdiction Based on Plaintiff's Overtime Claim**

The Ninth Circuit's decision in *Perez v. Rose Hills Co.*, 131 F.4th 804 (9th Cir. 2025) makes clear that Caliber has established the amount in controversy for removal pursuant to CAFA. In *Perez*, the plaintiff brought a wage-and-hour class action and alleged that the employer committed violations "at times" and "throughout the statutory period." *Id.* at 806–07. The employer removed under CAFA and assumed that each class member experienced, each week, one hour of unpaid regular time, one hour of unpaid overtime, one compensable meal-period violation, and one compensable rest-period violation. *Id.* at 806–07. The district court rejected the violation-rate assumptions

because the defendant had not supported them with evidence and granted the plaintiff's motion to remand. *Id*. at 807.

The Ninth Circuit vacated the remand order. It explained that "[w]hat makes an assumption reasonable may depend on which element of the amount-in-controversy calculation is at issue." *Id*. at 808. Some inputs, such as the number of employees in the class, "may be most easily shown through the defendant's employment records," and it may therefore "make sense to expect a defendant to introduce evidence of that number." *Id*. By contrast, "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the *alleged* violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist." *Id*. (emphasis in original). For that reason, the removing defendant may often determine the alleged violation rate by looking to the plaintiff's complaint. *Id*. The Ninth Circuit held that violation-rate assumptions do not necessarily require independent evidentiary support if they are founded on a reasonable interpretation of the complaint. *Id*. at 808–10. The Ninth Circuit accepted that the phrase "at times" in the plaintiff's complaint made it reasonable for the defendant to assume that "every week during the class period, it failed to pay all class members for one hour or regular time, one hour of overtime, a one-hour compensable meal break, and a one-hour compensable rest break." *Id*. at 806–07, 810.

*Perez* does not hold that every "at times" allegation supports any violation-rate assumption a removing defendant selects. Nor does it allow a removing defendant to substitute speculation for proof of objective inputs such as class size, workweeks, wage rates, or terminated-employee counts. The question remains whether the assumed violation rate is a reasonable interpretation of the particular complaint, viewed together with competent evidence supporting the non-violation-rate inputs. *See id*. at 808–10; *Ibarra*, 775 F.3d at 1198–99.

Several post-*Perez* district court decisions have credited as reasonable assumptions like those made by Caliber. *See Perez v. Rose Hills Co.*, No. 2:24-cv-04827-JLS-PVC, 2025 WL 2631603, at *4–5 (C.D. Cal. Aug. 29, 2025) (on remand

from the Ninth Circuit, finding one-hour-per-week violation rate assumption reasonable where the complaint alleged violations "at times" to "Plaintiff and the Class, or some of them"); *Alvarado v. Charter Commc'ns, LLC*, No. 2:26-cv-01813-AH (PVCx), 2026 WL 1121926, at *4 (C.D. Cal. Apr. 23, 2026) (finding a 5% violation rate reasonable where the complaint alleged violations "at times" and the defendant made conservative adjustments to account for absences and other limiting facts).[3]

Here, Caliber's one-hour-per-week overtime assumption is a reasonable interpretation of the Complaint. The Complaint alleges that, for at least four years before the filing of the action and continuing to the present, Defendants failed "at times" to pay overtime wages to Plaintiff and Class Members, "or some of them." Doc. # 1-1 ¶ 12. It identifies several alleged mechanisms for failing to pay the putative class members overtime, including off-the-clock pre-shift work, post-shift work, work beyond scheduled hours, work during meal periods, walkie-talkie-related work, time-

[3] Plaintiff relies on several pre-*Perez* district court decisions rejecting assumed violation rates based on allegations that violations occurred "at times." Doc. # 11 at 16–18. *See, e.g.*, *Arnett v. Traditions Health LLC*, No. 5:23-cv-02324-JGB (SHKx), 2024 WL 289916, at *4–5 (C.D. Cal. Jan. 24, 2024) (rejecting 20% violation-rate assumptions for meal and rest period claims where the complaint alleged violations occurred "at times" and the defendant did not explain or provide evidence showing why a 20% rate was reasonable); *Siaosi v. TA Operating LLC*, No. 5:23-cv-01240-JGB (SHKx), 2023 WL 5985488, at *6–7 (C.D. Cal. Sept. 14, 2023) (rejecting assumed violation rates where the complaint alleged that violations occurred "at times" and to "some of them," and concluding that the defendant had not shown why even a 5% assumed violation rate was reasonable); *Gonzalez v. H&M Hennes & Mauritz L.P.*, No. 8:21-cv-01611-JLS (JDEx), 2022 WL 179292, at *4 (C.D. Cal. Jan. 20, 2022) (rejecting once-per-week assumptions where the complaint alleged violations "at times" and reasoning that the same language could support lower assumed frequencies); *Duran v. Allegis Glob. Sols., Inc.*, No. 20-CV-09025-JD, 2021 WL 3281073, at *3–4 (N.D. Cal. Aug. 2, 2021) (rejecting 100% violation-rate assumptions where the complaint used limiting language such as "at times" and the defendant did not offer extrinsic evidence validating its assumptions); *Brown v. Janus of Santa Cruz*, No. 21-cv-00094-BLF, 2021 WL 3413349, at *5–6 (N.D. Cal. Aug. 5, 2021) (concluding that allegations that violations occurred "at times" did not support the defendant's assumed violation rates without additional evidence); *Getaw v. Consol. Disposal Serv., LLC*, No. 2:21-cv-06097-SVW-JPR, 2021 WL 4902465, at *4–5 (C.D. Cal. Oct. 20, 2021) (rejecting overtime assumptions where the defendant did not provide evidence supporting the number of qualifying workweeks or shifts). Those decisions remain useful where a defendant assumes a violation rate that is not reasonably tethered to the complaint or where the defendant fails to support objective inputs with competent evidence. But after *Perez*, the Court may not reject Caliber's one-hour-per-week overtime assumption merely because Caliber did not introduce evidence proving the alleged violation rate. *See* 131 F.4th at 808–10.

entry manipulation, and regular-rate miscalculation. *Id*. Plaintiff also alleges that he and the putative Class Members worked more than eight hours in a day, more than forty hours in a week, or seven consecutive days in a workweek without proper overtime compensation. *Id*. ¶¶ 12, 36–38.

Caliber's calculation is also tied to relevant employment data. In addition to assuming one unpaid overtime hour per week based on Plaintif's complaint, Caliber applies the 2021 California minimum wage of $14.00, applies the standard 1.5 overtime multiplier, and multiplies that amount by 320,760 workweeks. These inputs are supported by declarations from Caliber's employees Fumurescu and McBride. *See* Doc. # 1 ¶ 32; Doc. # 13-1 ¶ 7.[4] Together, this calculation indicates that Plaintiff's overtime wage claim places at least $6,735,960 in controversy. Doc. # 1.

Plaintiff argues that this case is distinguishable from *Perez* and its progeny because the Complaint alleges violations as to "Plaintiff and Class Members, or some of them." Doc. # 14 at 14 (citing Doc. # 1-1 ¶ 12). Plaintiff asserts that this limiting phrase makes it unreasonable to apply the one-hour-per-week assumption to every class member and every workweek. Doc. # 11 at 18; Doc. # 14 at 14–15. The Court does not read *Perez* to render such limiting language meaningless in all cases. But Plaintiff's argument is not persuasive here.

Had the Complaint identified only a narrow subgroup of affected employees, or had Caliber assumed violations on every shift, the "or some of them" language might carry more weight. But Caliber assumes only one unpaid overtime hour per workweek instead of assuming that every shift worked involved unpaid overtime. Doc. # 1 ¶ 32. And the Complaint alleges a common course of conduct toward the entire class and

---

[4] Fumurescu's declaration supports the workweek input by stating that more than 6,750 non-exempt employees worked for Caliber in California between May 27, 2022 and May 3, 2024, and that those employees worked more than 320,760 workweeks. Doc. # 13-1 ¶ 7. Fumurescu also states that the broader period from January 23, 2021 through February 13, 2025 involved more than 1,037,800 workweeks. *Id*. ¶ 8. Thus, the challenged calculation is likely a conservative estimate, as it relies on only a subset of the workweeks Caliber identified.

identifies several mechanisms by which non-exempt employees allegedly were denied overtime compensation. Doc. # 1-1 ¶¶ 12, 28, 30, 36–38. On this record, the "or some of them" language does not make Caliber's one-hour-per-week assumption unreasonable.

Plaintiff's reliance on *Harris* is also unpersuasive. Doc. # 11 at 21; Doc. # 14 at 10–12. In *Harris*, the defendant assumed that all hourly employees were members of the meal-period and rest-period subclasses and worked shifts long enough to qualify for one meal period and two rest periods each week. 980 F.3d at 697–98. The Ninth Circuit held that the defendant had not supported those assumptions because it offered no evidence that all members of the hourly class worked qualifying shifts. *Id.* at 700–01.

That problem is less acute here because Caliber's calculation rests on the overtime claim itself, rather than depending on whether every class member worked shifts long enough to trigger meal-period or rest-period obligations. And Plaintiff expressly alleges that Plaintiff and Class Members worked overtime hours without proper overtime compensation. Doc. # 1-1 ¶¶ 12, 36–38.

To be clear, the Court does not here adopt a general benchmark violation rate for all cases involving overtime wage claims. It holds only that, given this Complaint's overtime allegations and Caliber's record-supported workweek input, one unpaid overtime hour per workweek is a reasonable estimate of the amount Plaintiff has placed in controversy. Because the resulting overtime calculation alone exceeds CAFA's $5 million threshold, the Court need not decide whether Caliber's waiting-time-penalty calculation or attorney-fee estimate is reasonable. *See Arias*, 936 F.3d at 928 n.5 (recognizing no need to calculate attorney's fees where damages alone exceed the jurisdictional threshold).[5]

---

[5] Whether shift-length evidence would be necessary to support meal-period, rest-period, or waiting-time-penalty calculations is a separate question the Court does not address here, as these calculations are not necessary to establish the amount in controversy.

For these reasons, Caliber has shown by a preponderance of the evidence that the amount in controversy exceeds $5 million.

### C.    Plaintiff's Equitable-Jurisdiction Argument Does Not Require Remand

Plaintiff also argues that remand is required—or, at minimum, that the UCL claim should be remanded—because the Court lacks equitable jurisdiction over his UCL claim for restitution of unpaid wages. Doc. # 11 at 10, 21–24. Plaintiff relies principally on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), which held that a plaintiff seeking equitable restitution under state law in federal court must establish that she lacks an adequate remedy at law. *Id.* at 844. That rule may affect whether Plaintiff can ultimately obtain equitable relief in this Court, but it does not require remand of this action.

The Ninth Circuit has made clear that *Sonner* was not a subject-matter-jurisdiction decision. *Sonner v. Premier Nutrition Corp.*, 49 F.4th 1300, 1303–05 (9th Cir. 2022). And in *Ruiz v. Bradford Exch., Ltd.*, 153 F.4th 907 (9th Cir. 2025), the Ninth Circuit confirmed that equitable jurisdiction is distinct from subject-matter jurisdiction. *Id.* at 912. *Ruiz* involved a materially different posture: the plaintiff filed in state court, sought only equitable restitution under California's UCL and False Advertising Law, while conceding that a damages remedy could have been available under the Consumer Legal Remedies Act. *Id.* at 909–10. After the defendant removed under CAFA, the district court remanded for lack of equitable jurisdiction. *Id.* at 910. The Ninth Circuit held that a district court may remand a removed case for lack of equitable jurisdiction, but only after the removing defendant has an opportunity to waive the adequate-remedy-at-law objection. *Id.* at 913–18. Thus, *Ruiz* confirms that a lack of equitable jurisdiction may justify remand in a properly removed case seeking only equitable relief, but only after the removing defendant has an opportunity to waive the adequate-remedy-at-law objection. *Id.* at 918.

-13-

Here, Plaintiff does not bring an equitable-only action. He asserts several legal claims under the California Labor Code, and, as explained above, Caliber has established CAFA jurisdiction based on Plaintiff's overtime claim. When a district court has subject-matter jurisdiction over at least part of a removed action, the ordinary remedy is not to remand the entire case because some requested relief may be unavailable in federal court. *See Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1005–07 (9th Cir. 2001). District courts have applied the same principle in similar cases, declining to remand where the court otherwise had subject-matter jurisdiction over legal claims, even though the plaintiff's equitable claims or remedies might later be dismissed or limited.[6]

The Court therefore declines to remand this action based on Plaintiff's equitable-jurisdiction argument.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is DENIED.

**IT IS SO ORDERED.**

Dated: July 7, 2026

_Cynthia Valenzuela_
HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE

---

[6] *See, e.g.*, *Lopez v. Gen. Dynamics Info. Tech., Inc.*, No. 24-cv-01743-BAS-DEB, 2025 WL 2308098, at *16 (S.D. Cal. Aug. 11, 2025) (declining to remand UCL claim where the plaintiff also brought Labor Code claims providing legal remedies); *Kim v. Walmart, Inc.*, No. 2:22-cv-08380-SB-PVC, 2023 WL 196919, at *3 (C.D. Cal. Jan. 13, 2023) (denying remand because "[l]ack of equitable jurisdiction over some claims cannot serve as a basis for remanding a case in its entirety"); *Travonne Hooks v. Dignity Health*, No. CV 22-07699-DSF (PDx), 2022 WL 17968833, at *2–3 (C.D. Cal. Dec. 27, 2022) (dismissing equitable claims without prejudice but denying remand and retaining jurisdiction over remaining claims); *Naseri v. Greenfield World Trade, Inc.*, No. SACV 21-01084-CJC (KESx), 2021 WL 3511040, at *1 (C.D. Cal. Aug. 10, 2021) (denying remand of Plaintiff's claims for equitable relief under the UCL and CLRA, noting that "federal courts may exercise jurisdiction over equitable claims under the UCL and CLRA").